R. G. Wheeler v. Commissioner. R. G. Wheeler and Vennie V. Wheeler v. Commissioner.
Wheeler v. Commissioner
Docket Nos. 76625, 76626.
United States Tax Court
T.C. Memo 1963-84; 1963 Tax Ct. Memo LEXIS 260; 22 T.C.M. (CCH) 371; T.C.M. (RIA) 63084; March 22, 1963
*260 Held: (a) That respondent properly made use of the net worth and expenditures method of determining taxable net income for all the years in issue and petitioners have failed to show error in said determinations. (b) That some part of the deficiency in income tax for each of the years involved was due to fraud with intent to evade taxes. (c) That no income tax return was filed for the year 1946, and the returns of 1945 and 1947 to 1950, inclusive, were false and fraudulent with intent to evade taxes. (d) That petitioners have failed to prove error on the part of respondent in determining additions to tax provided by sec. 291(a) for the year 1946; additions to tax provided by sec. 294(d)(1)(A) for the years 1945, 1946, 1947 and 1949; additions to tax provided by sec. 294(d)(2) for the years 1948 and 1950. [1]
R. G. Wheeler, pro se, Miami, Fla. George W. Calvert, Esq., and Winfield A. Gartner, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in income tax and additions to tax against petitioners for the years and in the *261 amounts as follows: Additions to Tax, I.R.C. 1939
Docket
Sec.
Sec.
Sec. 294
Sec.
No.
Year
Deficiencies
291(a)
293(b)
(d)(1)(A)
294(d)(2)
76625
1945
$ 6,942.63
$3,471.32
$ 632.77
$ 421.85
1946
1,293.93
$323.48
646.97
116.46
77.64
1947
17,740.80
8,870.40
1,700.13
1,133.42
1948
4,962.15
2,481.08
425.74
283.83
76626
1949
14,400.95
7,200.48
1,401.23
934.15
1950
496.46
1,133.85
147.80 The cases were consolidated for hearing pursuant to agreement of the parties. The issues to be considered by the Court are: (a) Whether respondent properly made use of the net worth and expenditures method in determining taxable net income for all the years in issue and whether petitioners have met their burden of proof of demonstrating error in said determinations: (b) Whether some part of the deficiency in any of the years involved was due to fraud with intent to evade taxes; (c) Whether a return was filed for the year 1946 and whether the returns filed for 1945 and 1947 to 1950, inclusive, were false and fraudulent with intent to evade taxes; and (d) Whether petitioners have demonstrated error on the part of respondent in determining additions to tax provided by section 291(a) for the year 1946; additions to tax provided by section 294(d)(1)(A) for *262 the years 1945, 1946, 1947 and 1949; and additions to tax provided by section 294(d)(2) for the years 1948 and 1950. Respondent concedes that R. G. Wheeler is not liable for the addition to tax provided by section 294(d)(2) for the years 1945, 1946 and 1947, and that R. G. and Vennie V. Wheeler are not liable for the section 294(d)(2) addition for the year 1949. Respondent also concedes that R. G. Wheeler is not liable for the addition to tax provided for by section 294(d)(1)(A) for the year 1948. Findings of Fact Some of the facts are stipulated and are included herein by this reference. Petitioners, R. G. Wheeler (sometimes hereinafter referred to as Wheeler or the petitioner) and Vennie V. Wheeler, his wife, filed joint Federal income tax returns with the collector of internal revenue for the district of Georgia for the taxable years 1949 and 1950. Petitioners filed an amended Federal income tax return for the taxable year 1950 on March 17, 1952, with the collector of internal revenue for the district of Georgia. For the taxable years 1945, 1947 and 1948, Wheeler filed separate Federal income tax returns with the collector of internal revenue for the district of Georgia. Petitioner *263 failed to file a Federal income tax return for the year 1946. He also did not file any returns for the years 1941 through 1944. In February 1952, a special agent joined a revenue agent in investigating the tax liability of the petitioners for the years 1945 through 1950. Wheeler was asked for all books and records that he had in connection with his business operations during the period under investigation, plus his personal checks. Wheeler furnished some personal bank statements and some partial business records in the form of a journal and bank statements. Having received no records at all for some years and considering the partial records which were received for the other years to be inadequate for determining income, the agents found it necessary to resort to the net worth plus personal expenditures method to compute income. In order to determine all of the petitioners' assets and liabilities, the agents discussed the different bank accounts and other holdings with the petitioners and their representatives. They visited banks, courthouses, and other sources of information in the area in which Wheeler operated during the period. As a result of their investigation, the agents compiled *264 a net worth statement covering the years 1944 to 1950, inclusive, which was used in the statutory notice of deficiency. During the years 1945 through 1950, petitioner was engaged in the operation of drug stores either as a sole proprietor or as an equal partner with his brother, C. B. Wheeler. He also operated one drug store as a corporation during part of these years. In addition, Wheeler received income from rental property, from the sale of property, and from interest income. About August 31, 1944, petitioner sold a drug store he had been operating at 1238 South Oxford Road, Atlanta, Georgia, to C. S. Horton for $13,000. At December 31, 1944, and 1945, C. S. Horton owed petitioner on notes receivable in connection with the sale the respective amounts of $7,100 and $3,275. The notes were paid in full during 1946. Thereafter in 1944, petitioner opened a new drug store with his brother, C. B., at 1236 Broadway, Columbus, Georgia. C. B. had closed a drug store in Opelika, Alabama, and moved that store's furniture and fixtures, having a cost basis of $7,300, to the new Columbus store. This drug store was an equal partnership between C. B. and R. G. and was known as Wheeler's Pharmacy *265 (hereinafter referred to as the Columbus store). In 1944, the Columbus store purchased equipment from The National Show Case Company at a cost of $2,208.66 and paid an additional $1,500 for remodeling. At the end of 1944, the partnership owed $750 to The National Show Case Company, the balance due on the equipment. This was paid in full during 1945. Fifty percent thereof, or $375, is includable as a note payable of R. G. Wheeler in petitioners' net worth at December 31, 1944. The Columbus store, a partnership, owned furniture and fixtures at the end of 1944 with a total cost basis of $11,008.66. Fifty percent of this amount, $5,504.33, is includable in petitioner's net worth at December 31, 1944. The petitioner had accounts payable at the end of 1944 in the amount of $1,825.96, which amount is includable in petitioner's net worth at December 31, 1944. The Columbus store, a partnership, maintained a business bank account at the Fourth National Bank, Columbus, Georgia. There was a balance of $2,755.42 in the account at the end of 1944. Fifty percent of this amount, $1,377.71, is includable in petitioner's net worth at December 31, 1944. The Columbus store, a partnership, owned merchandise *266 inventory at the end of 1944 with a cost basis of $9,764.50. Fifty percent thereof, $4,882.25, is includable in petitioner's net worth at December 31, 1944. In 1945, petitioner purchased the interest of C. B. in the Columbus store, a partnership, for $6,500. The Columbus store, a sole proprietorship, on December 31, 1945, had cash in the business bank account with the Fourth National Bank in the amount of $5,542.58. The total balance, $5,542.58, is includable in R. G. Wheeler's net worth at December 31, 1946. The Columbus store, a sole proprietorship, owned furniture and fixtures with a total cost basis of $11,088.66 on December 31, 1945. This amount is includable in petitioner's net worth at December 31, 1945. Petitioner owed accounts payable on December 31, 1945, in the amount of $3,374.60. This amount is includable in petitioner's net worth at December 31, 1945. The Columbus store owned merchandise inventory at December 31, 1945, in the amount of $9,023. This amount is includable in petitioner's net worth at December 31, 1945. About August 16, 1946, C. B. repurchased a one-half interest in the Columbus store for exactly what he had sold it to petitioner for the previous year, $6,500. *267 They were again equal partners. The Columbus store, a partnership, had cash in the business bank account at the Fourth National Bank at the end of 1946 in the amount of $4,131.46. Fifty percent thereof, or $2,065.74, is includable in petitioner's net worth at December 31, 1946. The petitioner owed accounts payable at the end of 1946 in the amount of $1,737.92, which amount is includable in petitioner's net worth at December 31, 1946. The Columbus store, a partnership, owned merchandise inventory at the end of 1946 with a cost basis of $9,293.70. Fifty percent thereof, $4,646.85, is includable in petitioner's net worth at December 31, 1946. The Columbus store owned furniture and fixtures at the end of 1946 with a cost basis of $11,008.66. Fifty percent thereof, or $5,504.33, is includable in petitioner's net worth at December 31, 1946. The Columbus store was closed in 1947 and its furniture, fixtures, and merchandise were moved to Manchester, Georgia, where petitioner and C. B. opened another drug store as equal partners. Petitioner and C. B. sold the Manchester drug store about September 24, 1947, to George E. Wolfe for $25,000. At the end of 1947, petitioner owed C. B. $7,000 in connection *268 with the sale, which amount was paid to C. B. about January 20, 1948. At the end of the years 1947, 1948, 1949 and 1950, George E. Wolfe owed petitioner the following amounts: Date
Amount
December 31, 1947
$14,750
December 31, 1948
11,750
December 31, 1949
8,750
December 31, 1950
6,000 About August 1, 1946, petitioner purchased the capital stock of Peachtree Pharmacy, Inc., 557 Peachtree Street, N.E., Atlanta. Georgia, from Paul D. Selman at a cost of $28,875. About September 19, 1946, petitioner sold his brother, C. B., a one-half interest in the pharmacy (which was then known as Wheeler's Peachtree Pharmacy, Inc.) for $14,000. Thus, at December 31, 1946, petitioner had one-half interest in the corporation, or an investment of $14,437.50. In September 1947, petitioner and his brother, C. B., opened a new Wheeler's Pharmacy located at Twelfth Street, Columbus, Georgia, in which they were again equal partners. During 1947, petitioner traded his interest in the drug store located at Twelfth Street, Columbus, to C. B. for C. B.'s one-half interest in Wheeler's Peachtree Pharmacy, Inc. About July 30, 1949, C. B. paid petitioner $18,000 for a one-half interest in Wheeler's Peachtree Pharmacy, Inc. *269 Thus, from sometime in 1947 until about July 30, 1949, petitioner was the sole owner of Wheeler's Peachtree Pharmacy, Inc., and had an investment therein at December 31, 1947, and December 31, 1948, in the amount of $28,875. Petitioner owned a one-half interest in the corporation at December 31, 1949, and at December 31, 1950. Thus, at December 31, 1949 and 1950, petitioner had an investment in this corporation of $14,437.50. Petitioner had a long-term capital gain of $3,562.50 on the sale of a one-half interest in Wheeler's Peachtree Pharmacy, Inc., to his brother, C. B., about July 30, 1949, of which fifty percent, or $1,781.25, is taxable to him in 1949. The computation is as follows: Sales Price
$18,000.00
Less: Cost
14,437.50
Net Gain
$ 3,562.50
Amount Taxable - 50%
$ 1,781.25 Wheeler did not report this sale on his income tax return. About December 2, 1946, petitioner paid $18,000 for a one-half interest in a drug store being operated at 490 Ponce de Leon Avenue, Atlanta, Georgia. During 1947, petitioner purchased the other one-half interest in this drug store at a cost of $17,500. Petitioner was then sole owner of the drug store and operated it as a sole proprietorship until it was *270 sold in 1949. Petitioner owned cash in the business bank account, at the Citizens and Southern National Bank, Atlanta, Georgia, of Wheeler's Pharmacy, 490 Ponce de Leon Avenue, Atlanta, Georgia, at December 31, 1947 and 1948, in the respective amounts of $6,959.09 and $4,891.74. About June 10, 1948, petitioner purchased the drug store being operated at 122 Ponce de Leon Avenue from the Liggett Drug Company at a cost of $14,511.42. This store was sold in 1949 for $15,836.49. Petitioner owned merchandise inventory at the stores located at 122 and 490 Ponce de Leon Avenue, Atlanta, at the end of the years 1947 and 1948 in the total amounts of $19,088.84 and $28,499.12, respectively. Petitioner owned furniture, fixtures, and equipment located at 490 Ponce de Leon Avenue with a cost basis of $8,336.80 at the end of the year 1947. At the end of the year 1948, petitioner owned furniture, fixtures, and equipment located at 490 Ponce de Leon Avenue in the total amount of $9,797.74. This figure includes the cost of items owned at the end of 1947, $8,336.80, plus additions of $1,460.94. At the end of the year 1948, petitioner owned furniture, fixtures and equipment located at 122 Ponce de Leon *271 Avenue with a cost basis of $5,000. At the end of the year 1947, the petitioner owed accounts payable in the amount of $3,520.80. At the end of the year 1948, petitioner owed accounts payable in the total amount of $5,637.12. About April 21, 1949, petitioner sold the drug store being operated at 490 Ponce de Leon Avenue, Atlanta, Georgia, to G. M. and H. H. Hoffman for $35,000. He received $25,000 at the date of sale and notes payable totalling $10,000. There were balances due to him on these notes at December 31, 1949 and 1950 in the amounts of $6,000 and $500, respectively. Petitioner, about September 14, 1949, sold the drug store being operated at 122 Ponce de Leon Avenue, Atlanta, to Paul D. Selman for $15,836.49. In the year 1949, petitioner opened up a new drug store at 1061 Ponce de Leon Avenue which he thereafter operated as a sole proprietorship. Petitioner owned furniture and fixtures located at the 1061 Ponce de Leon Avenue store with a cost basis of $31,227.65 at the end of the year 1949. Petitioner owned furniture and fixtures located at the 1061 Ponce de Leon Avenue store with a cost basis of $40,330.64 at the end of the year 1950, which consisted of $31,227.65, the *272 cost basis of furniture and fixtures at the end of the year 1949, and $9,102.99, additions made during the year 1950. Petitioner owned cash in the business bank account of the 1061 Ponce de Leon Avenue store at the Citizens and Southern National Bank, Atlanta, at the end of the years 1949 and 1950 in the amounts of $22,780.14 and $15,121.22, respectively. Petitioner owned merchandise inventory at the 1061 Ponce de Leon Avenue store at the end of the years 1949 and 1950 in the respective amounts of $33,765.17 and $30,951.40. At the end of the year 1949, the petitioner owed accounts payable in the amount of $20,923.70. About October 31, 1950, petitioner purchased a drug store known as Palm Beach Pharmacy, West Palm Beach, Florida (hereinafter referred to as the West Palm Beach Store) at a cost of $36,800. In connection with the purchase, petitioner assumed a first mortgage payable to S. L. Mercer on which $18,500 was due and assumed a chattel mortgage payable to The Atlantic National Bank on which $6,800 was due. At December 31, 1950, the unpaid balance on the mortgage to S. L. Mercer was $18,200 and the unpaid balance on the mortgage to The Atlantic National Bank was $6,026.40. On December *273 31, 1950, petitioner owed the George Daro Fixture Company $663.32 for fixtures purchased for his West Palm Beach Store during 1950. At the end of the year 1950, petitioner owed accounts payable in the amount of $23,921.34. Petitioner owned cash in the business bank account of the West Palm Beach Store at The Atlantic National Bank, West Palm Beach, at December 31, 1950, in the amount of $1,336.95. After adjustment for outstanding checks, the account was overdrawn at December 31, 1950, in the amount of $601.91. At the end of 1950, the petitioner owned furniture and fixtures located at the West Palm Beach Store with a cost basis of $19,950. Petitioner owned merchandise inventory at the West Palm Beach Store at the end of the year 1950 with a cost basis of $18,465.20. At the dates shown below, petitioner had balances in a personal account at the Fulton National Bank of Atlanta, Atlanta, Georgia, as follows: Date
Amount
December 31, 1944
$ 8,018.89
December 31, 1945
14,265.42
December 31, 1946
4,368.29
December 31, 1947
4,436.94
December 31, 1948
4,248.30
December 31, 1949
19.94
December 31, 1950
19.94
Petitioner opened a personal bank account at the First National Bank, Peachtree and North Avenue Branch, *274 Atlanta, Georgia, in 1947. The account had balances at the end of the years 1947, 1948, 1949, and 1950 in the amounts of $12,785.23, $9,938.21, $3,667.49 and $16,116.08, respectively. Petitioner opened a personal savings account entitled "Mr. or Mrs. R. G. Wheeler" at the Fulton County Federal Savings and Loan, Atlanta, Georgia, in 1948. The account had balances (per bank records) at the end of the years 1948, 1949 and 1950 in the respective amounts of $1,012.50, $1,000 and $1,030.23. Petitioner had cash in trust with the Clerk of the United States District Court, Atlanta, Georgia, in the amount of $3,000 on December 31, 1949. About September 25, 1943, R. G. purchased a two-story residence and land known as 1310 Emory Road, Atlanta, at a cost of $12,000, allocable $1,500 to land and $10,500 to buildings. In connection with the purchase, he borrowed $8,250 from the Acacia Mutual Life Insurance Company. The unpaid balances on this loan at the end of the years 1944 to 1950, inclusive, were as follows: Date
Amount
December 31, 1944
$7,783.43
December 31, 1945
7,408.44
December 31, 1946
6,975.64
December 31, 1947
6,445.53
December 31, 1948
6,049.51
December 31, 1949
5,554.29
December 31, 1950
None In *275 the years 1947 and 1948, the petitioner spent $596 and $850, respectively, for capital improvements to the property. About September 22, 1950, petitioner sold the 1310 Emory Road property to A. R. Tyson for $27,500. Tyson gave a mortgage and notes payable to petitioner in the amount of $2,500. The unpaid balance on these notes at December 31, 1950, was $2,200. Petitioner had a long-term capital gain of $15,410.61 on the sale of the property at 1310 Emory Road, Atlanta, of which fifty percent, or $7,705.31, is taxable to him in 1950. The computation is as follows: Sales Price
$27,500.00
Cost: Original Cost
$12,000.00
Improvements
1,446.00
Furnishings
1,750.00
Total Cost
$15,196.00
Less: Depreciation on Buildings
Less:
$2,056.61
Furnishings worth $1,750.00
1,050.00
3,106.61
12,089.39
Net Gain
15,410.61
Amount Taxable - 50%
$ 7,705.31 Wheeler did not report this sale on his original 1950 income tax return. After the internal revenue agents began their examination, Wheeler filed an amended 1950 income tax return on which this sale was reported. About March 15, 1948, petitioner purchased a frame apartment building and lot known as 617 North Highland Avenue, 1076 North Avenue or 1076 Highland Avenue, Atlanta, *276 from W. C. Dean at a cost of $18,700, allocable $2,000 to land and $16,700 to building. In connection with this purchase, petitioner borrowed $10,000 from the Life Insurance Company of Virginia. The unpaid balances on this loan at the end of the years 1948, 1949 and 1950 were as follows: Date
Amount
December 31, 1948
$9,395.72
December 31, 1949
8,557.69
December 31, 1950
None Petitioner traded the property on the purchase of The Essex House, West Palm Beach, Florida, on December 18, 1950. About April 25, 1949, petitioner purchased a stucco apartment building and lot known as 1084 North Avenue, Atlanta, from John H. Hartley for $13,501.42, allocable $1,555 to land and $11,946.42 to building. In payment for the property, petitioner assumed an unpaid balance of $5,219.31 on a mortgage payable to Life Insurance Company of Virginia, gave a check in the amount of $4,979.01, and transferred to Hartley the 1947 Cadillac automobile having a value of $3,250. The mortgage had an unpaid balance of $4,873.61 on December 31, 1949. This property was traded on the purchase of The Essex House, West Palm Beach, on December 18, 1950. About December 18, 1950, petitioner purchased land and a building known *277 as The Essex House, West Palm Beach, from Arthur E. Stern. In connection with the purchase, he gave a mortgage and notes payable to Stern in the amount of $40,000 (which amount he still owed at December 31, 1950) and deeded to Stern the property known as 617 North Highland Avenue and 1084 North Avenue. Stern assumed mortgages on the two pieces of property held by Life Insurance Company of Virginia in the total amount of $12,079.20 (including principal and interest). However, petitioner paid Stern the $12,079.20 for the assumption of the mortgage. Insofar as petitioner was concerned, the transaction was nontaxable in 1950. Petitioner still owned the Essex House property at December 31, 1950. The petitioner had a cost basis of $70,477.32 in The Essex House at December 31, 1950. The computation is as follows: Mortgage Assumed
$40,000.00
Basis of Atlanta
Property Traded
Cost: Frame Property
$18,700.00
Stucco Property
13,501.42
Total
$32,201.42
Less: Depreciation Re-
serve
2,983.45
29,217.97
Commission R. F. May Co.
Check outstanding
December 31, 1950
1,259.35
Basis of The Essex House
$70,477.32
About May 23, 1949, R. G. and Vennie V. Wheeler purchased land and a house thereon known as 8441 Collins Avenue, *278 Miami Beach, Florida, from N. H. Darsky at a cost of $45,500 and the transfer to Darsky of Wheeler's 1948 Cadillac automobile having a value of $4,734.30, or a total consideration of $50,234.30. Wheeler gave Darsky a mortgage and notes in the amount of $25,000. There were unpaid balances on these notes at December 31, 1949 and 1950 in the amounts of $22,500 and $17,500, respectively. Wheeler still owned this property at December 31, 1950. About August 12, 1950, petitioner purchased a lot on Collins Drive, Miami Beach, Florida, from A. J. McDonald at a cost of $10,000. Wheeler gave McDonald a mortgage and notes in the amount of $5,000. The unpaid balance at December 31, 1950, was $5,000. Wheeler still owned this property at December 31, 1950. About November 14, 1944, petitioner purchased property known as 1159 Tate Drive, Columbus, Georgia, from Mrs. Tom N. Blowers at a cost of $10,500. In connection with this purchase, petitioner borrowed $6,000 from Cooperative Federal Savings and Loan Association - Loan Account No. 788. The unpaid balances on this loan at December 31, 1944, and 1945, were $5,972 and $5,600.25, respectively. Petitioner sold the property to John B. McCollum on or about *279 April 23, 1946, for $11,000. McCollum paid R. G. $5,392.05 and paid the $5,558.95 balance due on the mortgage to Cooperative Federal Savings and Loan Association. Petitioner purchased a house and lot known as 1440 Emory Road, Atlanta, from Samuel R. Unger about February 24, 1948, at a cost of $21,500. Petitioner assumed a mortgage due to Decatur Building and Loan Association on which there was due $10,500. The unpaid balances on this mortgage at December 31, 1948, 1949 and 1950 were $10,191.96, $9,649.31 and $9,245.74, respectively. The petitioner still owned this property at December 31, 1950. On January 1, 1945, petitioner owned a 1941 Oldsmobile automobile that he had purchased on September 2, 1943, for $1,495. In 1945, petitioner traded the Oldsmobile, plus $2,000 in cash, on a 1941 Cadillac. The basis of the 1941 Oldsmobile, $1,495, reduced by depreciation in the amount of $186.88, plus the cash of $2,000, gave the petitioner a $3,308.12 cost basis in the 1941 Cadillac. The petitioner held the Cadillac until April of 1948, at which time it was traded in on another automobile. About April 8, 1948, petitioner purchased a 1947 Cadillac sedan for $3,650. He paid $2,500 by check and *280 was allowed $1,150 as a trade-in on the 1941 Cadillac. This 1947 Cadillac was transferred to John H. Hartley in connection with petitioner's purchase of the stucco property known as 1084 North Avenue, Atlanta, on April 25, 1949. About November 6, 1948, petitioner purchased a 1948 Cadillac at a cost of $4,734.30. He transferred this car to N. H. Darsky about May 23, 1949, in connection with the purchase of the property known as 8441 Collins Avenue, Miami Beach, Florida. About July 3, 1947, petitioner purchased a 1946 Mercury convertible coupe at a cost of $2,395. He paid $1,900 on the date of purchase and was allowed $495 on a trade-in of a 1941 No. 61 motorcycle. This automobile was traded in by petitioner in 1948 on a 1947 Packard. About August 28, 1948, petitioner purchased a 1948 Packard for $3,914.50. Petitioner paid $500 in cash, financed $1,950 through the Automobile Finance Department of the First National Bank, Atlanta, and received a trade-in allowance of $1,464.50 on the 1946 Mercury. The petitioner still owned this automobile at December 31, 1950. There were unpaid balances due on the loan from the First National Bank, Atlanta, at December 31, 1948, and 1949, in the respective *281 amounts of $1,803.80 and $811,81. This note was paid in full during 1950. In 1948 petitioner purchased a 1947 Ford panel truck for $1,600. This truck was traded in on a 1948 Pontiac sedan coupe in June 1949. About June 9, 1949, petitioner purchased a 1948 Pontiac sedan coupe at a cost of $2,195. He paid $145 in cash at the time of the purchase and was allowed $800 as a trade-in on the 1947 Ford truck. The remainder of the cost was financed with Automobile Financing Company, Atlanta. The account had an unpaid balance at December 31, 1949, of $1,054.20 and was paid in full during 1950. This automobile was traded in on a 1947 Cadillac in August 1950. About August 3, 1950, petitioner purchased a 1947 Cadillac at a cost of $1,795. He paid $450 in cash at the time of purchase and was allowed $1,345 as a trade-in on the 1948 Pontiac. This automobile was traded in on a 1950 Pontiac in October 1950. About October 21, 1950, petitioner purchased a 1950 Pontiac at a cost of $2,500. He paid $1,000 by check and was allowed $1,500 as a trade-in on the 1947 Cadillac. He still owned this automobile at December 31, 1950. About February 16, 1948, R. G. borrowed $6,000 from the Fulton National Bank of *282 Atlanta, Decatur Branch. The entire amount of the loan was repaid during 1948. About December 13, 1948, R. B. borrowed $6,000 from the Fulton National Bank of Atlanta, Decatur Branch. The entire $6,000 was repaid during the year 1949. About June 7, 1948, R. G. borrowed $15,750 from the Citizens and Southern National Bank, Atlanta. There was an unpaid balance due on the loan at December 31, 1948, in the amount of $7,875. The loan was paid in full during 1949. About October 9, 1950, R. G. borrowed $12,000 from the Citizens and Southern National Bank, Tenth Street Branch, Atlanta. There was an unpaid balance due on the loan at December 31, 1950, in the amount of $10,000. Petitioner owed the First National Bank, North Avenue Branch, Atlanta, $10,206.91, $11,923.61, and $1,812.40 at the end of the years 1948, 1949 and 1950, respectively. At December 31, 1949, and 1950, R. G. owed the National Cash Register Company $2,412.57 and $907.07 on equipment which he purchased for his drug store at 1061 Ponce de Leon Avenue, Atlanta, during 1949 and 1950. At December 31, 1950, R. G. owed the National Cash Register Company $2,548.18 on equipment which he had purchased during 1950 for his store at *283 West Palm Beach. At December 31, 1949, and 1950, R. G. owed the Bastian Blessing Company $6,336.12 and $2,715.48, respectively, on equipment that he had purchased during 1949 for his store at 1061 Ponce de Leon Avenue, Atlanta. In addition to amounts spent for certain contributions, interest and taxes, as well as life insurance premiums and a Federal court fine, the following amounts were expended for living expenses by R. G. in the years 1945 to 1948, inclusive, and by R. G. and Vennie V. Wheeler in the years 1949 and 1950: Year
Amount Spent
1945
$ 4,820.00
1946
6,435.97
1947
10,598.07
1948
3,912.94
1949
4,521.84
1950
4,034.54
Petitioner paid life insurance premiums to the Maryland Life Insurance Company of Baltimore and the New York Life Insurance Company in the years 1948, 1949 and 1950 in the total amounts of $1,330.50, $1,816.90 and $1,816.90, respectively. Petitioners made contributions in the amounts of $150, $222 and $404 in the years 1948, 1949 and 1950, respectively. Petitioners paid nonbusiness interest expenses in the years 1948, 1949 and 1950 in the respective amounts of $1,002.88, $1,505.93 and $1,160.93. Petitioners paid nonbusiness taxes during the years 1948, 1949 and 1950 in the *284 respective amounts of $531.01, $1,473.11 and $1,405.18. During 1950 petitioner paid a Federal court fine (Docket No. 18449) in the amount of $2,000. The following schedule shows the cash in bank accounts of R.G. Wheeler at the end of the years 1944 to 1948, inclusive, and R. G. and Vennie V. Wheeler at the end of the years 1949 and 1950: SCHEDULE OF BANK BALANCES
12-31-44
12-31-45
12-31-46
12-31-47
R. G. Wheeler Personal
Accounts: First National Bank
$12,785.23
Fulton National Bank
$8,018.89
$14,265.42
$4,368.29
4,436.94
Fulton City Fed. Sav-
ings & Loan
Business Accounts: C & S National Bank
490 Ponce de Leon Ave.
6,959.09
1061 Ponce de Leon Ave.
Atlantic National Bank
West Palm Beach, Fla.
Fourth National Bank
Columbus, Ga. 50%
1,377.71
5,542.58
2,065.74
Total Cash in Banks
$9,396.60
$19,808.00
$6,434.03
$24,181.26
SCHEDULE OF BANK BALANCES
12-31-48
12-31-49
12-31-50
R. G. Wheeler Personal
Accounts: First National Bank
$ 9,938.21
$ 3,667.49
$16,116.08
Fulton National Bank
4,248.30
19.94
19.94
Fulton City Fed. Sav-
ings & Loan
1,012.50
1,000.00
1,030.23
Business Accounts: C & S National Bank
490 Ponce de Leon Ave.
4,891.74
1061 Ponce de Leon Ave.
22,780.14
15,121.22
Atlantic National Bank
West Palm Beach, Fla.
(601.91)
Fourth National Bank
Columbus, Ga. 50%
Total Cash in Banks
$20,090.75
$27,467.57
$31,685.56
*285 The following schedule shows the notes receivable which are includable in the net worth of R. G. Wheeler at the end of the years 1944 to 1950, inclusive. SCHEDULE OF NOTES RECEIVABLE
12-31-44
12-31-45
12-31-46
12-31-47
Geo. E. Wolfe - Sale of Man-
chester Store
None
$14,750.00
G. M. and H. H. Hoffman -
Sale
of 490 Ponce de Leon
None
C. S. Horton - Sale of
Pharmacy
on Oxford Rd.
$7,100.00
$3,275.00
None
A. R. Tyson - 1310 Emory Rd.
Total Notes Receivable
$7,100.00
$3,275.00
None
$14,750.00
SCHEDULE OF NOTES RECEIVABLE
12-31-48
12-31-49
12-31-50
Geo. E. Wolfe - Sale of Man-
chester Store
$11,750.00
$ 8,750.00
$6,000.00
G. M. and H. H. Hoffman -
Sale
of 490 Ponce de Leon
6,000.00
500.00
C. S. Horton - Sale of
Pharmacy
on Oxford Rd.
A. R. Tyson - 1310 Emory Rd.
2,200.00
Total Notes Receivable
$11,750.00
$14,750.00
$8,700.00
The following schedule shows the inventories which are includable in R. G. Wheeler's net worth at the end of the years 1944 to 1950, inclusive: SCHEDULE OF INVENTORIES
12-31-44
12-31-45
12-31-46
12-31-47
1236 Broadway, * Columbus,
Ga.
$4,882.25
$9,023.00
$4,646.85
122 and 490 Ponce de Leon
Ave., Atlanta, Ga.
$19,088.84
1061 Ponce de Leon Ave.,
Atlanta, Ga.
West Palm Beach Store, West
Palm Beach, Fla.
$4,882.25
$9,023.00
$4,646.85
$19,088.84
*286 SCHEDULE OF INVENTORIES
12-31-48
12-31-49
12-31-50
1236 Broadway, * Columbus,
Ga.
122 and 490 Ponce de Leon
Ave., Atlanta, Ga.
$28,499.12
1061 Ponce de Leon Ave.,
Atlanta, Ga.
$33,765.17
$30,951.40
West Palm Beach Store, West
Palm Beach, Fla.
18,465.20
$28,499.12
$33,765.17
$49,416.60
The following schedule shows the real estate of R. G. at the end of the years 1944 to 1948, inclusive, and R. G. and Vennie V. Wheeler at the end of the years 1949 and 1950: SCHEDULE OF REAL ESTATE
12-31-44
12-31-45
12-31-46
12-31-47
310 Emory Road
$12,000.00
$12,000.00
$12,000.00
$12,596.00
Frame Apartment
Stucco Apartment
Essex House, West Palm
Beach, Fla.
8441 Collins Ave., Miami
Beach, Fla.
Lot - Miami Beach, Fla.
1159 Tate Drive, Colum-
bus, Ga.
10,500.00
10,500.00
1440 Emory Road
Total Real Estate
$22,500.00
$22,500.00
$12,000.00
$12,596.00
Less: Land (Rental &
Vacant)
1,500.00
1,500.00
1,500.00
1,500.00
Buildings
$21,000.00
$21,000.00
$10,500.00
$11,096.00
SCHEDULE OF REAL ESTATE
12-31-48
12-31-49
12-31-50
310 Emory Road
$13,446.00
$ 13,446.00
Frame Apartment
18,700.00
18,700.00
Stucco Apartment
13,501.42
Essex House, West Palm
Beach, Fla.
$ 70,477.32
8441 Collins Ave., Miami
Beach, Fla.
50,234.30
50,234.30
Lot - Miami Beach, Fla.
10,000.00
1159 Tate Drive, Colum-
bus, Ga.
1440 Emory Road
21,500.00
21,500.00
21,500.00
Total Real Estate
$53,646.00
$117,381.72
$152,211.62
Less: Land (Rental &
Vacant)
3,500.00
5,250.00
10,000.00
Buildings
$50,146.00
$112,131.72
$142,211.62
R. *287 G. for the years 1944 to 1948, inclusive, and R. G. and Vennie V. for the year 1949 owned furniture and fixtures in rental property having the following cost basis: Rental Furniture
and Fixtures
Year Ended
Cost Basis *
December 31, 1944
$3,500
December 31, 1945
3,500
December 31, 1946
1,750
December 31, 1947
1,750
December 31, 1948
1,750
December 31, 1949
1,750
December 31, 1950
None The following schedule shows the drug store furniture and fixtures which are includible in R. G. Wheeler's net worth at the end of the years 1944 to 1950, inclusive. FURNITURE AND FIXTURES - DRUG STORES
Date
Acq.
12-31-44
12-31-45
12-31-46
Columbus store
1944
$5,504.33
$11,008.66
$5,504.33
490 Ponce de Leon Ave.
1946
490 Additions
1948
122 Ponce de Leon Ave.
1948
1061 Ponce de Leon Ave.
1949
1061 Additions
1950
West Palm Beach, Fla.
1950
Total Furniture and Fixtures
$5,504.33
$11,008.66
$5,504.33
FURNITURE AND FIXTURES - DRUG STORES
12-31-47
12-31-48
12-31-49
12-31-50
Columbus store
490 Ponce de Leon Ave.
$8,336.80
$ 8,336.80
490 Additions
1,460.94
122 Ponce de Leon Ave.
5,000.00
1061 Ponce de Leon Ave.
$31,227.65
$31,227.65
1061 Additions
9,102.99
West Palm Beach, Fla.
19,950.00
Total Furniture and Fixtures
$8,336.80
$14,797.74
$31,227.65
$60,280.64
The *288 following schedule shows the automobiles of R. G. at the end of the years 1944 to 1948, inclusive, and of R. G. and Vennie V. at the end of the years 1949 and 1950: SCHEDULE OF AUTOMOBILES
Date
Acq.
12-31-44
12-31-45
12-31-46
12-31-47
1941 Oldsmobile
1943
$1,495.00
Trade 1945 on 1941 Cadillac
1941 Cadillac *
1945
$3,308.12
$3,308.12
$3,308.12
1947 Cadillac
1948
1948 Cadillac
1948
1946 Mercury
1947
2,395.00
1948 Packard -
1948
Traded 1951 on
1951 Packard
1947 Panel Ford
1948
1948 Pontiac **
1949
1950 Pontiac ***
1950
$1,495.00
$3,308.12
$3,308.12
$5,703.12
* Price
$3,495.00
Less: Depr. on auto
Less traded
186.88
Basis
$3,308.12
** Total Invoice
$2,526.30
** Less: Int. &
331.30
Charges
Basis
$2,195.00
SCHEDULE OF AUTOMOBILES
12-31-48
12-31-49
12-31-50
1941 Oldsmobile
1941 Cadillac *
Traded 1948 on 1947 Cadillac
1947 Cadillac
$3,650.00
Traded 1949 on Real
Estate
1948 Cadillac
4,734.30
Traded 1949 Miami
Real Estate
1946 Mercury
Traded 1948 on 1947 Packard
1948 Packard -
3,914.50
$3,914.50
$3,914.50
Traded 1951 on
1951 Packard
1947 Panel Ford
1,600.00
Traded 1949 on Pon-
1948 Pontiac **
tiac
2,195.00
Traded
1950 on
1947
Cadillac
1950 Pontiac ***
2,500.00
$13,898.80
$6,109.50
$6,414.50
The following *289 schedule shows the investments includable in petitioner's net worth at the end of the years 1944 to 1950, inclusive: SCHEDULE OF INVESTMENTS
12-31-44
12-31-45
12-31-46
12-31-47
Wheeler's Peachtree
Pharmacy
None
None
$14,437.50
$28,875.00
490 Ponce de Leon
None
None
18,000.00
Total Investments
None
None
$32,437.50
$28,875.00
SCHEDULE OF INVESTMENTS
12-31-48
12-31-49
12-31-50
Wheeler's Peachtree
Pharmacy
$28,875.00
$14,437.50
$14,437.50
490 Ponce de Leon
Total Investments
$28,875.00
$14,437.50
$14,437.50 R. G., for the years 1946, 1947 and 1948, and R. G. and Vennie V., for the years 1949 and 1950, owned personal household furniture having the following cost basis: Personal House-
hold Furniture
Year Ended
Cost Basis
December 31, 1946
$1,750
December 31, 1947
1,750
December 31, 1948
3,850
December 31, 1949
3,850
December 31, 1950
3,850
The following schedule shows the notes payable of R. G. at the end of the years 1944 to 1948, inclusive, and of R. G. and Vennie V. at the end of the years 1949 and 1950: SCHEDULE OF NOTES PAYABLE
12-31-44
12-31-45
12-31-46
12-31-47
Cooperative Fed. Sav. &
Loan - House - Tate Dr.,
Columbus
$ 5,972.00
$ 5,600.25
Acacia Mutual Life Ins. Co.,
1310 Emory Rd., Atlanta
7,783.43
7,408.44
$6,975.64
$ 6,445.53
Decatur Bldg. & Loan Assn.,
1440 Emory Rd., Atlanta
Fulton Natl. Bk. - Decatur
Br.
First Natl. Bk. - North Ave.
Br.
Citizens & Southern Natl.
Bk.
Life Ins. Co. of Va., 1076
N. Highland Ave.
Natl. Cash Register Co.,
Eqpt., 1061 Ponce de Leon
Natl. Cash Register Co.,
Eqpt., West Palm Beach
Life Ins. Co. of Va., 1084
North Ave
N. H. Darsky, 8441 Collins
Ave., Miami Beach
Bostion Blessing Co., Eqpt.,
1061 Ponce de Leon
First Natl. Bk., Auto Loan
Atlantic Natl. Bk. W.P.B.,
Eqpt. - W.P.B.
Auto Financing, Inc.
Arthur E. Stern, The Essex
House, West Palm Beach
Alfred J. McDonald, Lot,
Miami Beach
S. L. Mercer, West Palm
Beach Store
Geo. Daro Fixture Co.
Natl. Showcase Co., Colum-
bus (1/2)
375.00
C. B. Wheeler
7,000.00
$14,130.43
$13,008.69
$6,975.64
$13,445.53
*290 SCHEDULE OF NOTES PAYABLE
12-31-48
12-31-49
12-31-50
Cooperative Fed. Sav. &
Loan - House - Tate Dr.,
Columbus
Acacia Mutual Life Ins. Co.,
1310 Emory Rd., Atlanta
$ 6,049.51
$ 5,554.29
Decatur Bldg. & Loan Assn.,
1440 Emory Rd., Atlanta
10,191.96
9,649.31
$ 9,245.74
Fulton Natl. Bk. - Decatur
Br.
6,000.00
First Natl. Bk. - North Ave.
Br.
10,206.91
11,923.61
1,812.40
Citizens & Southern Natl.
Bk.
7,875.00
10,000.00
Life Ins. Co. of Va., 1076
N. Highland Ave.
9,395.72
8,557.69
Natl. Cash Register Co.,
Eqpt., 1061 Ponce de Leon
2,412.57
907.07
Natl. Cash Register Co.,
Eqpt., West Palm Beach
2,548.18
Life Ins. Co. of Va., 1084
North Ave
4,873.61
N. H. Darsky, 8441 Collins
Ave., Miami Beach
22,500.00
17,500.00
Bostion Blessing Co., Eqpt.,
1061 Ponce de Leon
6,336.12
2,715.48
First Natl. Bk., Auto Loan
1,803.80
811.81
Atlantic Natl. Bk. W.P.B.,
Eqpt. - W.P.B.
6,026.40
Auto Financing, Inc.
1,054.20
Arthur E. Stern, The Essex
House, West Palm Beach
40,000.00
Alfred J. McDonald, Lot,
Miami Beach
5,000.00
S. L. Mercer, West Palm
Beach Store
18,200.00
Geo. Daro Fixture Co.
663.32
Natl. Showcase Co., Colum-
bus (1/2)
C. B. Wheeler
$51,522.90
$73,673.21
$114,618.59 Petitioner had no checks outstanding in the years 1944, 1945 and 1946. For the years 1947 and 1948, petitioner *291 had checks outstanding in the respective total amounts of $1,200.83 and $8,931.58. For the years 1949 and 1950, R. G. and Vennie V. had checks outstanding in the total amounts of $6,420.35 and $17,247.67, respectively. At the end of each of the taxable years indicated, petitioner owed accounts payable - trade - in the following amounts: Taxable Year
Amount
1944
$ 1,825.96
1945
3,374.60
1946
1,737.92
1947
3,520.80
1948
5,637.12
1949
20,923.70
1950
23,921.34
Petitioner at the end of the years 1947, 1948, 1949 and 1950 owed accounts payable - business insurance - in the amounts of $370.29, $474.22, $1,745.81 and $1,850.25, respectively. Petitioner at the end of the years 1947, 1948, 1949 and 1950 owed accrued business expenses in the respective amounts of $566.11, $1,973.93, $1,928.54 and $3,503.92. At the end of the years 1947 and 1948 the petitioner owed Wheeler's Peachtree Pharmacy, Inc., the respective amounts of $5,964.33 and $3,972.59. These amounts are shown as accounts receivable due from officers on the corporation's returns for those years. At the end of the years indicated, petitioner had a reserve account for depreciation on buildings, furniture, equipment, and automobiles in amounts as *292 follows: Year
Amount
1944
$ 765.38
1945
1,979.13
1946
2,986.11
1947
3,286.64
1948
4,957.21
1949
6,406.44
1950
6,359.02
At the end of the years indicated, R. G. for the years 1945 to 1948, inclusive, and R. G. and Vennie V. for the years 1949 and 1950, made personal expenditures in the following amounts: Year
Amount
1945
$ 4,820.00
1946
6,435.97
1947
10,598.07
1948
6,927.33
1949
9,539.78
1950
10,821.55
The petitioners had capital gains in the years 1949 and 1950 in the respective amounts of $3,562.50 and $15,410.61. Fifty percent of these capital gains, or $1,781.25 and $7,705.31, was taxable to them in the years 1949 and 1950, respectively. Petitioner sustained nonrecognized losses on the trade-in of personal automobiles in the years 1948, 1949 and 1950 in the respective amounts of $2,468.24, $700 and $1,007.82, computed as follows: 1948
1941 Oldsmobile
$1,495.00
Depreciation Allowed
186.88
Basis of 1941 Oldsmobile
$1,308.12
Plus Cash - for 1941 Cadillac
2,000.00
Cost of Cadillac
$3,308.12
Less: Depreciation
620.38
Basis of Cadillac
$2,687.74
Allowed on Trade 1948
1,150.00
$1,537.74
Cost of Mercury
$2,395.00
Allowed on Trade 1948
1,464.50
930.50
Total loss on Automobiles - 1948
$2,468.24
1949
Cost of Panel Ford
$1,600.00
Less: Depreciation
100.00
Basis
$1,500.00
Allowed on trade
800.00
Total loss on automobile - 1949
$ 700.00
1950
Cost of 1948 Pontiac
$2,195.00
Less: Depreciation
137.18
Basis
$2,057.82
Allowed on trade 1947 Cadil-
lac
1,345.00
Loss on Automobile - 1950
$ 712.82
Cost of 1947 Cadillac
$1,795.00
Allowed on Trade
1,500.00
Loss on Automobile - 1950
295.00
Total losses on automobiles - 1950
$1,007.82
*293 The following schedule shows the statutory deductions allowable to R. G. for the years 1945 to 1948, inclusive, and to R. G. and Vennie V. for the years 1949 and 1950: Item
1945
1946
1947
1948
1949
1950
Contributions
$260.78
$ 150.00
$ 222.00
$ 404.00
Interest
314.22
1,002.88
1,505.93
1,160.93
Taxes
210.00
531.01
1,473.11
1,405.18
Bad Debt
83.00
Standard Deduction
$500.00
$500.00
Totals
$785.00
$500.00
$500.00
$1,683.89
$3,201.04
$3,053.11
The following schedule shows the assets, liabilities, and net worth of R. G. at the end of the years 1944 to 1948, inclusive, and the assets, liabilities, and net worth of R. G. and Vennie V. at the end of each of the years 1949 and 1950: COMPUTATION OF NET WORTH
12-31-44
12-31-45
12-31-46
12-31-47
ASSETS
Cash in Banks
$ 9,396.60
$19,808.00
$ 6,434.03
$ 24,181.26
Cash in Trust (Clerk of
District Court, Atl.)
Notes Receivable
7,100.00
3,275.00
14,750.00
Inventory
4,882.25
9,023.00
4,646.85
19,088.84
Real Estate - Land
1,500.00
1,500.00
1,500.00
1,500.00
Buildings
21,000.00
21,000.00
10,500.00
11,096.00
Furniture & Fixtures,
Rental
3,500.00
3,500.00
1,750.00
1,750.00
Furniture & Fixtures -
Drug Store (Per Re-
turn)
5,504.33
11,008.66
5,504.33
8,336.80
Automobiles
1,495.00
3,308.12
3,308.12
5,703.12
Investments
32,437.50
28,875.00
Personal Household Fur-
niture
1,750.00
1,750.00
TOTAL ASSETS
$54,378.18
$72,422.78
$67,830.83
$117,031.02
LIABILITIES
Notes Payable
$14,130.43
$13,008.69
$ 6,975.64
$ 13,445.53
Outstanding Checks
1,200.83
Accounts Payable -
Trade
1,825.96
3,374.60
1,737.92
3,520.80
Accounts Payable -
Other Business Insur-
ance
370.29
Accrued Expenses (Per
Petitioner's Account-
ant)
566.11
Wheeler's Peachtree
Pharmacy, Inc. (Per
Return)
5,964.33
Reserve for Depreciation
765.38
1,979.13
2,986.11
3,286.64
TOTAL LIABILITIES
$16,721.77
$18,362.42
$11,699.67
$ 28,354.53
NET WORTH
$37,656.41
$54,060.36
$56,131.16
$ 88,676.49
*294 COMPUTATION OF NET WORTH
12-31-48
12-31-49
12-31-50
ASSETS
Cash in Banks
$ 20,090.75
$ 27,467.57
$ 31,685.56
Cash in Trust (Clerk of
District Court, Atl.)
3,000.00
Notes Receivable
11,750.00
14,750.00
8,700.00
Inventory
28,499.12
33,765.17
49,416.60
Real Estate - Land
3,500.00
5,250.00
10,000.00
Buildings
50,146.00
112,131.72
142,211.62
Furniture & Fixtures,
Rental
1,750.00
1,750.00
Furniture & Fixtures -
Drug Store (Per Re-
turn)
14,797.74
31,227.65
60,280.64
Automobiles
13,898.80
6,109.50
6,414.50
Investments
28,875.00
14,437.50
14,437.50
Personal Household Fur-
niture
3,850.00
3,850.00
3,850.00
TOTAL ASSETS
$117,157.41
$253,739.11
$326,996.42
LIABILITIES
Notes Payable
$ 51,522.90
$ 73,673.21
$114,618.59
Outstanding Checks
8,931.58
6,420.35
17,247.67
Accounts Payable -
Trade
5,637.12
20,923.70
23,921.34
Accounts Payable -
Other Business Insur-
ance
474.22
1,745.81
1,850.25
Accrued Expenses (Per
Petitioner's Account-
ant)
1,973.93
1,928.54
3,503.92
Wheeler's Peachtree
Pharmacy, Inc. (Per
Return)
3,972.59
Reserve for Depreciation
4,957.21
6,406.44
6,359.02
TOTAL LIABILITIES
$ 77,469.55
$111,098.05
$167,500.79
NET WORTH
$ 99,687.86
$142,641.06
$159,495.63 The following schedule shows the computation of the net income of R. G. for the taxable years 1944 to 1948, inclusive, and *295 the net income of R. G. and Vennie V. for the taxable years 1949 and 1950: COMPUTATION OF CORRECT NET INCOME
12-31-44
12-31-45
12-31-46
12-31-47
Net Worth
$37,656.41
$54,060.36
$56,131.16
$88,676.49
Less: Prior Year's Net Worth
37,656.41
54,060.36
56,131.16
Increase in Net Worth
$16,403.95
$ 2,070.80
$32,545.33
Add: Personal Expenditures
4,820.00
6,435.97
10,598.07
Unrecognized Loss on Sale of
Automobiles
Totals
$21,223.95
$ 8,506.77
$43,143.40
Less: One-Half of Long-Term
Capital Gain
Adjusted Gross Income
$21,223.95
$ 8,506.77
$43,143.40
Less: Statutory Deductions
785.00
500.00
500.00
Net Taxable Income
$20,438.95
$ 8,006.77
$42,643.40
COMPUTATION OF CORRECT NET INCOME
12-31-48
12-31-49
12-31-50
Net Worth
$99,687.86
$142,641.06
$159,495.63
Less: Prior Year's Net Worth
88,676.49
99,687.86
142,641.06
Increase in Net Worth
$11,011.37
$ 42,953.20
$ 16,854.57
Add: Personal Expenditures
6,927.33
9,539.78
10,821.55
Unrecognized Loss on Sale of
Automobiles
2,468.24
700.00
1,007.82
Totals
$20,406.94
$ 53,192.98
$ 28,683.94
Less: One-Half of Long-Term
Capital Gain
1,781.25
7,705.31
Adjusted Gross Income
$20,406.94
$ 51,411.73
$ 20,978.63
Less: Statutory Deductions
1,683.89
3,201.04
3,053.11
Net Taxable Income
$18,723.05
$ 48,210.69
$ 17,925.52 The petitioner's deposits to his *296 business bank accounts, less those items which would not constitute business receipts, such as loan proceeds, sales of property, and the like, exceed the business receipts, sales, reported on his income tax returns for the years 1945 to 1950, inclusive, as follows: Business Receipts
Deposited Over (Under)
Year
Business Receipts Reported
1945
$ 466.94)
1946
( 7,212.78)
1947
649.11
1948
( 531.22)
1949
10,608.62
1950
28,401.08
Total
$31,447.87
The deposits to the personal bank accounts of R. G. and Vennie V. exceeded the loans and returns of capital that were available and could have been deposited to these accounts during the years 1945 to 1950, inclusive, by the following amounts: Excess of
Deposits Over Loans
Year
and Returns of Capital
1945
$ 12,157.76
1946
7,978.85
1947
53,266.81
1948
34,289.54
1949
17,985.49
1950
30,682.69
Total
$156,316.14
The following schedule sets forth the deposits to business and personal bank accounts and the eliminations from those deposits to arrive at the net business receipts and net personal deposits for the years in question: Business
BUSINESS DEPOSITS
Bank Accounts
1945
1946
1947
1948
Columbus Bk. & Tr. Co.
$ 4,888.50
Fourth Natl. Bk., Columbus
81,348.94
$ 76,373.65
Citizens & Southern Natl.
45,902.06
$50,368.22
$156,521.04
Bk., Tenth St.
Atlantic Natl. Bk., West
Palm Beach
$86,237.44
$122,275.71
$50,368.22
$156,521.04
Less: Nonbusiness Deposits
36,000.00
14,000.00
15,000.00
Net Business Deposits
$86,237.44
$ 86,275.71
$36,368.22
$141,521.04
Sales per Return
85,770.50
79,062.93 *
37,017.33
140,989.82
Net Sales over Net Deposits
$ (466.94)
$ (7,212.78)
$ 649.11
$ (531.22)
PERSONAL DEPOSITS
Merchants & Mechanics Bank
$ 11,609.76
Fulton Natl. Bk., Decatur
$14,752.47
41,395.44
$45,863.80
$ 20,346.71
First Natl. Bk., North Ave
17,653.01
60,090.51
$14,752.47
$ 53,005.20
$63,516.81
$ 80,437.22
Less: Sale of House. Tate
12,000.00
St.
Transfers & Redeposits
8,751.96
31,387.68
Notes - Loans
20,500.00
11,760.00
Sale - 1310 Emory Rd.
Payments Rec'd on Notes
2,594.71
3,774.39
250.00
3,000.00
Sale, Store, Manchester
10,000.00
Total
$ 2,594.71
$ 45,026.35
$10,250.00
$ 46,147.68
Net Personal Deposits
$12,157.76
$ 7,978.85
$53,266.81
$ 34,289.54
*297 Business
BUSINESS DEPOSITS
Bank Accounts
1949
1950
Total
Columbus Bk. & Tr. Co.
$ 4,888.50
Fourth Natl. Bk., Columbus
157,722.59
Citizens & Southern Natl.
$205,679.32
$272,846.54
731,317.18
Bk., Tenth St.
Atlantic Natl. Bk., West
10,199.46
10,199.46
Palm Beach
$205,679.32
$283,046.00
$904,127.73
Less: Nonbusiness Deposits
43,000.00
12,000.00
120,000.00
Net Business Deposits
$162,679.32
$271,046.00
$784,127.72
Sales per Return
173,287.94
299,447.08
815,575.60
Net Sales over Net Deposits
$ 10,608.62
$ 28,401.08
$ 31,447.87
PERSONAL DEPOSITS
Merchants & Mechanics Bank
$ 11,609.76
Fulton Natl. Bk., Decatur
$ 8,085.39
130,443.81
First Natl. Bk., North Ave
51,731.77
$ 71,074.89
200,550.18
$ 59,817.16
$ 71,074.89
$342,603.75
Less: Sale of House. Tate
12,000.00
St.
Transfers & Redeposits
25,000.00
65,139.64
Notes - Loans
9,831.67
4,943.75
47,035.42
Sale - 1310 Emory Rd.
23,898.45
23,898.45
Payments Rec'd on Notes
7,000.00
11,550.00
28,169.10
Sale, Store, Manchester
10,000.00
Total
$ 41,831.67
$ 40,392.20
$186,242.61
Net Personal Deposits
$ 17,985.49
$ 30,682.69
$156,361.14
Identified deposits of cash to the petitioners' bank accounts during the years 1945, 1946, 1947, 1948, 1949 and 1950 amounted to $8,960, $1,032, $16,323, $13,640, $5,160, and $24,265, *298 respectively, or a total of $69,380 in cash deposits. Petitioner paid the following Federal income taxes for the years 1945 to 1948, inclusive: Year
Amount Paid
1945
$ 88.18
1946
None
1947
1,433.95
1948
100.00
R. G. and Vennie V. paid the following Federal income taxes for the years 1949 and 1950: Year
Amount Paid
1949
$1,213.76
1950
2,966.88 (Amended Return)
On his Federal income tax return filed for 1945, petitioner disclosed income, and tax due thereon, as follows: Rent
$ 2,394.00
Less: Depr., Repairs, Etc.
1,342.00
Net Rental Income
$1,052.00
Total Receipts - Drug Store
$85,770.50
Less: Cost of goods sold
$70,627.94
Other Business deductions
12,817.20
83,445.14
Net Profit - Drug Store
2,325.36
Adjusted Gross Income
$3,377.36
Less: Deductions
Contributions
260.78
Interest
314.22
Taxes
488.63
Rental Agent's Commission
126.00
Total Deductions
1,189.63
Net Income
$2,187.73
Normal Tax Exemption
500.00
Normal Tax Net Income
$1,687.73
Normal Tax Liability
$ 50.63
Net Income
$2,187.73
Less: Surtax Exemptions
2,000.00
Surtax Net Income
$ 187.73
Surtax Liability
$ 37.55
Total Tax Liability
$ 88.18 Petitioner filed a state income tax return for the year 1946 with the State of Georgia showing his address as Columbus, Georgia. This return disclosed income *299 as follows: Salarles, wages, commissions, etc.
$1,625.00
Income from business or profession
1,300.52
Total Income
$2,925.52
Less: Deductions
None
Net Income
$2,925.52
Less: Personal exemption and credit
for dependents (wife & 2 children)
3,300.00
Net Taxable Income
$ None
Petitioner's Federal income tax return filed for the year 1947 disclosed income, and tax due thereon, as follows: Salaries
$7,126.62
Gross Rents
$ 2,269.76
Less: Depr., Repairs, Etc.
1,369.67
Net Rents
$ 900.09
Sales - Drug Store
$37,017.33
Less: Cost of goods sold
$26,814.18
Other expenses
9,207.24
36,021.42
Net Profit - Drug Store
995.91
Discounts earned
$ 361.97
Adjusted Gross Income
$9,384.59
Less Deductions: Contributions
$ 75.00
Interest
353.43
Taxes
58.43
Miscellaneous
400.00
Total Deductions
886.86
Net Income
$8,497.73
Less: Exemptions (4)
2,000.00
Income subject to tax
$6,497.73
Tax Liability
$1,433.95 Petitioner's Federal income tax return filed for the year 1948 disclosed income, and tax due thereon, as follows: Salary
$ 3,525.00
Gross Rents
$ 4,545.19
Less: Depr., Repairs, etc.
2,211.75
Net Rental Income
2,333.44
Sales - Drug Store
$140,989.82
Less: Cost of goods sold
$109,481.19
Other expenses
34,314.04
143,795.23
Net Loss - Drug Store
(2,805.41)
Loss on sale of business assets
( 450.00)
Adjusted Gross Income
$ 2,603.03
Less Deductions: Contributions
$ 150.00
Interest
1,002.88
Taxes
531.01
Total Deductions
1,683.89
Net Income
$ 919.14
Less: Exemptions (3)
1,800.00
Income subject to tax
$ None
Tax Liability
$ None
On *300 their Federal income tax return filed for the year 1949, R. G. and Vennie V. Wheeler disclosed income, and tax due thereon, as follows: Salary
$ 5,181.00
Gross Rents
$ 6,606.27
Less: Depr., repairs, etc.
5,632.96
Net Rental Income
973.31
Drug Store Income: 490 Ponce de Leon Ave: Sales
$50,743.81
Less: Cost of goods sold
$39,642.12
Other expenses
9,466.91
49,109.03
Net Income - 490 Ponce de Leon
1,634.78
122 Ponce de Leon Ave.: Sales
$54,774.01
Less: Cost of goods sold
$41,919.29
Other expenses
8,341.93
50,261.22
Net Income - 122 Ponce de Leon
4,512.79
1061 Ponce de Leon Ave.: Sales
$67,770.12
Less: Cost of goods sold
$44,657.64
Other expenses
22,295.20
66,952.84
Net Income - 1061 Ponce de Leon
$ 817.28
Loss on sale of business assets
(678.44)
Adjusted Gross Income
$12,440.72
Less Deductions: Contributions
$ 222.00
Interest
1,505.93
Taxes
1,473.11
Total Deductions
3,201.04
Net Income
$ 9,239.68
Less: Exemptions (4)
2,400.00
Income subject to tax
$ 6,839.68
Tax Liability
$ 1,213.76 On their original Federal income tax return filed for the year 1950, the petitioners disclosed income, and tax due thereon, as follows: Salary
$ 4,000.00
Gross Rents
$ 7,837.22
Less: Depr., repairs, etc.
6,353.87
Net Rental Income
1,483.35
Drug Store Income: 1061 Ponce de Leon Ave.: Sales
$288,657.63
Less: Cost of goods sold
$207,986.00
Other expenses
70,733.52
278,719.52
Net Income - 1061 Ponce de Leon
9,938.11
West Palm Beach, Fla.: Sales
10,789.45
Less: Cost of goods sold
8,305.58
Other expenses
5,302.60
13,608.18
Net Income - West Palm Beach
(2,818.73)
Adjusted Gross Income
$12,602.73
Less Deductions: Contributions
404.00
Interest
1,160.93
Taxes
1,405.18
Losses
737.00
Total Deductions
3,707.11
Net Income
$ 8,895.62
Less: Exemptions (4)
2,400.00
Income subject to tax
$ 6,495.62
Tax Liability
$ 1,195.64
On *301 their amended Federal income tax return filed for the year 1950, the petitioners disclosed income, and tax due thereon, as follows: Salary
$ 4,000.00
Gross Rents
$ 7,837.22
Less: Depr., repairs, etc.
6,247.41
Net Rental Income
1,589.81
Drug Store Income: 1061 Ponce de Leon Ave.: Sales
$288,657.63
Less: Cost of goods sold
$207,936.00
Other expenses
70,733.52
278,719.52
Net Income - 1061 Ponce de Leon
$ 9,938.11
Gain on sale of assets
8,995.00
$24,522.92
Less: 50% of capital gain
4,497.50
Adjusted Gross Income
$20,025.42
Less Deductions: Contributions
$ 404.00
Interest
1,160.93
Taxes
1,405.18
Losses
737.00
Total Deductions
3,707.11
Net Income
$16,318.31
Less: Exemptions (4)
2,400.00
Income subject to tax
$13,918.31
Tax Liability
$ 2,966.88 The net worth computation discloses all of the petitioners' assets and liabilities. The petitioners had no undiscovered assets, such as money, in safe-deposit boxes or elsewhere. R. G. did not have any undeposited cash on hand at the end of the years 1944 to 1948, inclusive, with the exception of the $3,000 which was held in trust by the Clerk of the United States District Court, Atlanta, Georgia, at the end of 1949. R. G. and Vennie V. did not have any undeposited cash on hand at the end *302 of the years 1948, 1949 and 1950. The petitioners did not receive any money or property from gifts, inheritances, or other nontaxable sources in any of the years 1945 to 1950, inclusive. On or about November 15, 1941, Wheeler filled out and filed a financial statement with the Fulton National Bank, Atlanta. This financial statement disclosed, in part, the following information: R. G. Wheeler Financial Condition at November 15, 1941 Assets
Cash in Bank
$ 500.00
Accounts Receivable
300.00
Merchandise
4,000.00
Fixtures and Equipment
6,300.00
Real Estate
15,750.00
Automobile
800.00
Rents Receivable - $45 per
month
540.00
Total Assets
$28,190.00
Liabilities
Notes Payable
$ 2,110.48
Balance on Fixtures
700.00
For Merchandise
2,000.00
On Car
120.00
Real Estate Mortgage
8,339.52
Total Liabilities
$13,270.00
Net Worth
$14,920.00 On or about January 17, 1947, Wheeler filled out and filed a financial statement with the loan department of the Fulton National Bank, Atlanta, showing his financial condition at December 31, 1946. This financial statement disclosed the following: R. G. Wheeler Financial Condition at December 31, 1946 Assets
Cash on hand and in banks
$ 15,032.67
U.S. Bonds
2,000.00
Real Estate - 1310 Emory Road
25,000.00
Automobiles
3,500.00
Personal Property
5,000.00
Peachtree Pharmacy, 557 Peachtree
St.
35,000.00
Wheeler's Pharmacy, 490 Ponce de
Leon Ave.
35,000.00
Wheeler's Pharmacy, 1236 Broad-
way, Columbus, Ga.
30,000.00
Total Assets
$145,532.67 * *303 Liabilities
Mortgages Payable - Real Estate
$ 5,000.00
Net Worth
$140,532.67 *
On October 1, 1948, Wheeler filled out and filed a financial statement with the loan department at the Fulton National Bank, Atlanta. This financial statement disclosed, in part, the following: R. G. Wheeler Financial Condition at October 1, 1948 Assets
Cash on hand and in banks
$ 25,000.00
Loans Receivable
500.00
Accounts Receivable - Merchandise
1,040.00
U.S. Bonds
5,000.00
Real Estate
75,000.00
Other Assets
120,000.00
1948 Packard
$3,900.00
1947 Cadillac
3,700.00
1947 Ford
1,445.00
9,045.00
Total Assets
$235,585.00
Liabilities
Notes Payable - Banks
$ 10,000.00
Accounts Payable - Merchandise
7,500.00
Accounts Payable - Other
1,900.00
Real Estate Mortgages
24,200.00
Total Liabilities
$ 43,600.00
Net Worth
$191,985.00
Life Insurance Payable - Estate
$ 40,000.00
Other Financial Information
Monthly Income - Salary
$ 900.00
Monthly Income - Rents
800.00
Annual Sales
275,000.00
Net Profit for Year
27,500.00 Thomas Bartlett worked as a bookkeeper for Wheeler during the years 1949, 1950 and 1951. He kept single entry books for Wheeler's Peachtree Pharmacy, Inc., 557 Peachtree Street, and the 1061 Ponce de Leon Avenue store on a part-time basis. Bartlett made entries to a journal book from information *304 supplied to him by Wheeler in the form of a daily report sheet. Bartlett never checked the cash register, saw the cash register tapes, made deposits, nor handled any checks or cash. Wheeler made all deposits and, on occasion, the cash deposits for a day exceeded the sales figure for that day as supplied to Bartlett. On occasion, Wheeler paid personal bills with store funds. Vennie V. was paid a salary of $35 per week for each of the years 1945 to 1950, inclusive, from which no social security or withholding taxes were deducted. R. G. Wheeler was convicted, upon his plea of not guilty, on an indictment for criminally evading Federal income taxes for the year 1948. R. G. was convicted, upon his plea of nolo contendere, on an indictment for criminally evading Federal income taxes for the year 1949. In January 1950, the United States District Court for the Northern District of Georgia convicted R. G. Wheeler of violating the Harrison Narcotics Act. On March 4, 1946, the United States District Court for the Middle District of Georgia found R. G. Wheeler guilty of violating the Federal Food, Drug and Cosmetic Act. On March 3, 1956, Wheeler was found guilty by the United States District Court *305 for the Southern District of Florida on an indictment charging that he, while owner of a drug store, refilled prescriptions without having an authorization from the prescriber. R. G. and Vennie V. Wheeler failed to file a declaration of estimated tax for 1949. R. G. failed to file a declaration of estimated tax for the years 1945, 1946 and 1947. R. G. filed a declaration of estimated tax for the year 1948 showing an estimated tax liability in the amount of $400. R. G. and Vennie filed a declaration of estimated tax for the year 1950 showing an estimated tax liability in the amount of $1,000. The notice of deficiency applicable to the taxable years 1945, 1946, 1947, and 1948 was issued to R. G. Wheeler on June 27, 1958. The notice of deficiency applicable to the taxable years 1949 and 1950 was mailed to the petitioners on June 27, 1958. The petitioners did not maintain records that properly and accurately reflected taxable income from all sources from which income was received during each of the years 1945 to 1950, inclusive. R. G. Wheeler's correct net income for the years 1945 to 1948, inclusive, and the understatement of his income on his Federal income tax returns are as follows: *306 Net Income
Net Income
Understate-
Year
Reported
Corrected
ment
1945
$2,187.73
$20,438.95
$18,251.22
1946
No Return
8,006.77
8,006.77
1947
8,497.73
42,643.40
34,145.67
1948
919.14
18,723.05
17,803.91
R. G. and Vennie V. Wheeler's correct net income for the years 1949 and 1950 and the understatement of their income on their Federal income tax returns are as follows: Net Income
Net Income
Under
Year
Reported
Corrected
statement
1949
$9,239.68
$48,210.69
$38,971.01
1950
8,895.62 (orig.)
17,925.52
9,029.90
Each of the Federal income tax returns filed by R. G. Wheeler for the years 1945, 1947 and 1948 and by R. G. and Vennie V. Wheeler for the years 1949 and 1950 were false and fraudulent and were filed with willful intent to evade taxes. R. G. Wheeler fraudulently failed to file a Federal income tax return for the year 1946 with willful intent to evade taxes. Some part of the deficiency for each of the years 1945 to 1950, inclusive, is due to fraud with intent to evade the payment of Federal income taxes. Petitioner failed to file an income tax return for 1946 within the time prescribed by law. Opinion 1. Use of Net Worth and Expenditures Method We have considered so frequently the circumstances under which application of *307 the net worth and expenditures method is appropriate that an extended discussion here would serve no useful purpose. We think that an examination of our Findings demonstrates that the method should be approved here, both as a test of the accuracy of petitioner's returns and as valuable evidence of his correct net income. . Moreover, the occasion for its use here arose out of petitioner's own failure to keep adequate records which would have clearly reflected income. We might add that this appears to be a typical case calling for the net worth method. Moreover, no better or more appropriate method is suggested upon the facts of this case. We approve respondent's use of the method in the case before us. II. Fraud (Additions to Tax) In considering the issue of fraud, there are a few basic principles which we must keep in the forefront of our minds. The burden of proof on this issue rests upon respondent to prove by clear and convincing evidence that there is a deficiency in the year or years in question and that some part of each such deficiency is due to fraud with intent to evade taxes. Respondent is not permitted to rely upon his own determination *308 as a basis for sustaining his burden. On the other hand, neither he nor we are limited to or circumscribed by his own evidence. In deciding the issue, we may consider the entire record properly before us. Respondent may (and usually must) rely upon circumstantial evidence at least to some extent. Respondent need prove only that some part of each deficiency in issue is due to fraud. In his effort to meet his burden of proof of fraud, respondent relies largely upon the following as indicia: Failure to keep books and records of many income-producing activities; substantial increases in net worth over a long period of years greatly in excess of amounts of income reported; failure to report capital gains for 1949 and 1950. Respondent also urges and we agree that Wheeler was an intelligent businessman, fully familiar with his own affairs; and that it could not have been possible for him to have reported such substantial and repeated understatements of income without full knowledge of what he was doing. We have summarized quite briefly the contentions of respondent, because to do otherwise would be to repeat, in substance, all of the detailed facts in our Findings. *309 We are satisfied, however, by our own examination of the record that respondent has established for each of the years in question, by clear and convincing evidence, that there was a deficiency for each of said years; and that some part of each deficiency was due to fraud on the part of Wheeler with intent to evade his taxes. Respondent also points to the conviction of Wheeler by a jury of violation of the income tax law for 1948, a plea of nolo contendere and conviction for 1949, also for a tax violation (an acquittal for 1950) and several other convictions, one in 1946 for violation of the Federal Food Drug and Cosmetic Act; another in 1950 for violation of the Harrison Narcotic Act, and in 1956 for refilling prescriptions without authorization. Respondent urges that these convictions are affirmative evidence of fraud, and that as to the 1948 conviction, Wheeler is estopped to deny fraud. We find no occasion to pass on these issues because we have found fraud independent thereof as far as this case is concerned. We might well have considered said convictions in connection with Wheeler's credibility, but we are satisfied that we would have reached the same conclusion on the merits *310 whether the convictions were before us or not. We add that petitioner has offered no acceptable evidence or explanation of the actions from which fraud may readily be inferred. Under the circumstances, we sustain respondent on the issues in relation to additions to tax for fraud for each of the years in question. See section 293(b) of the 1939 Code. III. Limitations We hold that the statute of limitations for assessment and collection of deficiencies has not expired as to any of the years involved. Petitioner filed no return for 1946, and the provisions of section 276(a) apply. As to 1945 and 1947 to 1950, inclusive, we find that the returns in questions were false and fraudulent with intent to evade taxes. Our holding of fraud here is based upon the same circumstances from which we found here is based upon the same circumstances from which we found fraud in determining additions to tax, supra, and we need not repeat our views here. Section 276(a) again applies. We therefore sustain respondent on the issue of limitations as to all years in issue. IV. Deficiencies - Income Tax As to deficiencies in income taxes the burden of proof is on petitioner to demonstrate error in respondent's *311 determination which is presumed to be correct. We think it clear that petitioner has failed to meet his burden. We therefore sustain respondent's determination of deficiencies in income taxes for each of the years in issue. V. Additions to Tax (Other Than for Fraud) Petitioners have failed to prove error on the part of respondent in determining additions to tax provided by section 291(a) for the year 1946; additions to tax provided by section 294(d)(1)(A) for the years 1945, 1946, 1947 and 1949, and additions to tax provided by section 294(d)(2) for the years 1948 and 1950. Since the burden of proof of error in these respects rests with petitioner, his failure to prove error requires us to sustain respondent as to such determinations. Issues and items disposed of by stipulation, concession or agreement of the parties will be reflected in the computation under Rule 50. Decisions will be entered under Rule 50. Footnotes
1. All Code section references are to the Internal Revenue Code of 1939, unless otherwise stated.↩
*. R. G. Wheeler owned one-half of the Columbus Store at December 31, 1944, all of it at December 31, 1945, and one-half at December 31, 1946. The store was sold in 1947.↩
*. This furniture was purchased in 1944 at a cost of $3,500 for the property located at 1310 Emory Road. The petitioners used one-half of the house and furnishings in 1946 and 1947 and in 1948 removed one-half of the furnishings. This property was sold in 1950.↩
***. 1947 Cadillac purchased 1950 for daughter, traded on 1950 Pontiac 10-31-50.↩
*. State Return↩
*. $5,000 error in addition in statement as filed.